Good morning, Your Honors. May it please the Court, my name is Douglas Moylan. I am the Attorney General of Guam, here on behalf of the people of Guam, who are the government of Guam. Your Honor, first of all, we'd like to thank the Ninth Circuit for taking this case. It comes up on a quite unusual posture, and I believe this is the first time that this Honorable Court has ever dealt with this form of appeal. It is under the writ of certiorari jurisdiction that this Court maintains, and it deals with a matter of great importance to the people of Guam, in that this will determine whether or not the people will be required to pay a substantial amount of money in the form of a debt obligation that the current administration, as well as the legislature, and based upon the Supreme Court of Guam's determination, say is permissible. The case deals with a problem that was advanced to the Governor, and this Attorney General did suggest the avenue to the Supreme Court under the Declaratory Judgment Provision, which is under local law, Legislature created 7 GCA Section 4104, permitting advisory opinions, essentially, to be brought before the Supreme Court of Guam. In candor to the Court, and this particular person has raised it before the Supreme Court as the Legislative Council in the past, we, I had a concern about whether or not jurisdiction actually could be exercised by a Supreme Court, given the way that the Organic Act is structured. The Organic Act provides that the Supreme Court, the legislature can create courts of original jurisdiction, as well as an appellate court. And this particular court exercised a statutory grant to give an advisory opinion. And some of the history is that they followed the Massachusetts Advisory Opinion Statute, which was actually created in the Constitution. We have concerns about facing controversy, and because jurisdiction is always an issue, I raise it for candor of the Court. But I do acknowledge that I did indicate to the Governor that that was an avenue available, albeit back in 2002, it was also raised in a different capacity that we felt that they did not have jurisdiction. And the Guam Court ruled that it did have jurisdiction? Yes, ma'am. In 2002, Guam won a decision out of the Supreme Court when the former Governor had brought an issue, the legislature raised that, and it was denied. It is cited in the briefing papers. Counsel, let me just say I commend you for your commitment to the economic stability of Guam. But my concern with your position is that under our law, we give deference to the Supreme Court of Guam when it's interpreting one of its legislative enactments. Why should we depart from that practice in this case? That is an excellent question, Your Honor. The Federal Court has put a ceiling for a territory that Congress is administering. I'm sorry, the Congress has put a ceiling for a territory that it has mandated under the Constitution to administer. I use the analogy in this very court's analogy of like putting the fox in the henhouse. In this case, and we did cite the Byrne decision out of the Virgin Islands, which is a territory like this issue, when reading that 2003 decision, almost every factual statement there is akin to what's going on in Guam. You have a Governor, you have an Attorney General, which was appointed in the Virgin Islands, you have a legislature, and in that case, it was the District Court that actually stopped the process. That is not following the law. We have a government that, by its own law, requires that the actual value of property be ascertained every three years. The last actual ascertaining of that value was the It's three times over that the government of Guam has not done this appraisal as required by law. The Federal requirement, and your question is whether or not, why is it that the Federal Court should exercise its interpretation of the Federal ceiling requirement in 48 U.S.C. Section 1423A? It's because of the substance of what's being asked. We're letting the people that will benefit from this bond indenture, which is $418 million, decide what the ceiling is to the injury of the public. And in the Rivera decision, which was cited, and in the District Court of Guam, although they said that the, I believe it was the retirement unfunded liability did not go into the public debtness equation, they did point out that the reason why the debt ceiling was put there was to protect the community, the people, against a government that would be incurring ruinous and oppressive amounts of debt. And what was put before the figures up at $918 or $900-some million. Could I just stop you for a moment? You said the people who will benefit are the ones who interpret it, but the Supreme Court won't benefit, will it? Your Honor, and I respectfully defer to the brief that we submitted, in that the Supreme Court, there's two justices that we had respectfully requested to step out of the case. They declined to do so, but I believe that everybody in the government has a benefit in this, because salaries, the work week, there was, the government of Guam last year was cutting back on its working hours in order to save the money that they didn't have. Just so happens now we're in a better economic condition in that the government did not shut down, as it was threatened to do. But if we take your argument, then government could, I mean, the people who get their salaries from the government could never rule on or make a decision on any economic decision that would benefit the public service. How could that be? I take this issue very carefully, Your Honor. It's for purposes of why the federal court should exercise interpretation and jurisdiction of a statute passed by Congress. Of all the statutes that may have applicability to Guam, this one was intended to stop the government of Guam from oppressing the taxpayers through a ruinous amount of debt. That was the language that was used in the Vivera District Court opinion. In the Byrne decision that it... On your, in your view, why do we look at actual value rather than appraised value? Actual value is, excuse me, sir, the appraised value... Well, first I should ask you, in your view, is that a controlling question that we look at if we decide on jurisdiction? Yes, sir. That is, yes, sir. That is a very controlling question. And I equate actual value, as did the Byrne and Virgin Islands, to an appraised value. An appraised value would give us what truly is a willing buyer and a willing seller's fair market transaction. Right now, what we have on Guam is, since 1993, over 10 years of extrapolations, estimates going on. We have a board of equalization who, on a factual basis, hadn't been meeting regularly, and even the October 2002 certification have in their minutes, and it's an excerpt of record on page 97, that clearly shows they didn't even certify. They said subject to further calculation. That shows how poorly the actual executive branch had been following the law. They did not do the appraisal as required. The board of equalization was only authorized to estimate within three-year windows between appraisals. And as the Attorney General, this whole issue came up procedurally because I was expected to sign off on the bond indenture, and we had to put a halt to the process because we saw the government not doing the appraisal to get us the actual value. As a former AG in our office said, you cannot legislate reality. And I believe in the Byrne decision in 2003, actually it goes from 1999 and there is a decision out in 2003, it clearly has summed up that feeling by saying that the tax assessor does not dictate values. Values are set by the market. And on Guam, the last time the market set the values for overall property was back in 1993. Since that time, we have tax assessors that are trying to tell the government how much they can borrow. And the 1993 figure is important because on the excerpt of record, we cite the person who did the appraisal in 1993's opinion, his properties have values have dropped from the 1990 period to the 2002 period by up to 80 percent in value, which means that whatever ceiling that the court, if the court gets to that question, wishes to look at, according to the person who did the assessment in 1993, it's dropped almost 80 percent on commercial values. I think, I believe residential are a little bit higher. Again, these are questions of fact, which go back to our procedural problem that this issue was brought before the Supreme Court of Guam on July 1. We had a hearing on July 2. We had briefs submitted on July 7. And we had the oral argument on July 9. So we did a full battery of briefing without much time to develop a factual record and had a decision out by July 23. And that goes to our procedural problem that we were facing and how we could develop a factual record because value, I believe, is a factual determination. There was also evidence presented that the Supreme Court failed to comply with it, even if it did have jurisdiction. They didn't exercise their Rule 26 rule, appellate rule, which provided for a declaratory judgment procedure because we could not answer. There was no cross-examination or actual presentation of evidence before the Supreme Court that we could discern whether the tax assessor's declaration was actually valid. Your Honor, the worry I have with your argument, if we follow it, every time there is a question about debt, somebody has to go out and appraise all the property in Guam. Is that so? Not necessarily, Your Honor. In the Byrne decision back in 2003, the Virgin Islands, they addressed that question. And they said that the way Congress had intended to deal with its territories on this loan borrowing issue was they left it to the local law to set the parameters to determine the actual value that you mentioned. And on Guam, we did that, like in the Virgin Islands, by saying that an assessment every three years, given our local locality area in the world, was the best way to determine what actual values were. And because they've exceeded, and again, it's unusual to have the Attorney General going against the client that I'm in, but given our obligation to protect the public interest, I say this with a lot of caution, that we come to the Court with a government that has failed to follow the law. And it's difficult for our office to endorse something like that, knowing the ruinous borrowing that could go on. We also understand, and this would go back to your question, Judge Ronson, is that if we borrow territory under the Organic Act and under the U.S. Constitution, normally it's the federal government that would have to bail us out, one would think. The Department of the Interior has direct supervisory control over our government. If the local government officials cannot control the borrowing for the debt ceiling required by the Organic Act, then there is a substantial federal concern in making sure that the government borrowing ceilings are intact. Counsel, going back to your argument that the Rule 26 requirements were not met, did you object at the time of the presentation of evidence on that basis? On July 2, we inquired with the Court, and we are concerned about the factual record on how we were going to present it. However, on July 2 … Well, the Court said it was going to do an expedited hearing. You agreed. Yes, we did. We did go along with it. However, we did indicate that we had a concern about the factual record. Right. But this particular issue, that there was a violation of Rule 26 and no cross-examination, the Court was not given an opportunity to consider and resolve that objection, was it? I believe I was the one that had the hearing on July 2, 2003. I did indicate that to the Court. There was no request for reconsideration requested of the … Did you tell the Court that you had a concern about being able to cross-examine the witnesses? I cannot. My recollection isn't that accurate, Your Honor. I believe it was in terms of we have concerns about developing a factual record. Right. But it wasn't precisely the argument that you're making. I cannot represent that to the Court. I would also note, Your Honors, that the Supreme Court Rules of Appellate Procedure have a procedure for en banc review, which, because they do not have four part-time justices in place, there is no en banc review. But I could have asked for reconsideration. However, we did not. We strictly went to the writ of certiorari request. Did you want to reserve the balance of your time? Thank you, ma'am. Yes. Thank you. I know you're finished, but the procedure, as I understood it, is there are four justices, is that right? There are three full-time justices, Your Honor, and four part-time justices. Yes. Four part-timers we had before. They all removed themselves from the bench because I believe a conflict. Thank you. Excuse me. Good morning, Your Honors. May it please the Court. Arthur Clark on behalf of the Governor of Guam, Felix Camacho. I think initially in the appellant's brief, Your Honor, the AG complains with respect primarily with respect to defects in the procedural due process. And I think as Judge Rawlinson pointed out, there are some questions here with respect to waiver issues. First thing I wanted to point out is with respect to Rule 26. Rule 26 incorporates only specific rules of civil procedure, not necessarily trial procedure. And those specific rules primarily focus on the issues of pleadings. And in this particular case, Your Honor, this is not a situation where we have one opponent suing another opponent and trying to seek damages. So in that regard, I think one particular issue that the Attorney General's office raises is they weren't allowed to provide an answer to a complaint. That's not the process that's required in this particular case, Your Honor. We're dealing with a declaratory judgment provided under specific statute. And that's also another distinction that I'd like to point out to the Court. I think the Attorney General initially identified Rule 4104 as providing advisory opinion authority to the Supreme Court of Guam. That's actually incorrect. It's a declaratory judgment. A declaratory judgment has a binding effect, Your Honor. And on that basis, the Court should be allowed to consider facts as they were presented. Just as importantly, Your Honor, facts were presented. The Attorney General himself identifies prior to the actual hearing before the Court, he raised a question with respect to how facts would be handled. Not receiving an answer from the Court, nevertheless submitted himself to the jurisdiction of the Court and never raised an objection with respect to the facts that were being presented, never made an offer of proof to the Court with respect to facts he thought he could present. As a matter of fact, his brief is replete with facts that he claims he was prepared to present but inexplicably didn't present during the hearings, Your Honor. And he offers no explanation for why he didn't present it, although his brief claims to having had these facts available at the time. Now, all these procedural questions aside, the real question is the meaning of the words in the Organic Act. I mean, words are aggregate tax assessment, is that right? Aggregate tax valuation, yes, Your Honor. Aggregate tax valuation. Yes, Your Honor. Doesn't that sound like it's what's good for tax purposes, is that issue? Well, I think that's what the Guam Supreme Court held, Your Honor, that the would be the number upon which, for debt ceiling purposes, the government could rely. And that's exactly what the Supreme Court ruled in this particular case. I think one of the problems we have in the interpretation of aggregate tax valuation, I guess, is the latter of the words valuation. The Attorney General has argued that that term, which is a federal term, should be defined by local enactment, which is not correct. First of all, the Supreme Court pointed out some obvious reasons why it wouldn't control. One is because the word value, which is 35% of actual value or appraised value, is just that, an enactment by an inferior legislature, the Guam legislature, two years after the enactment of the Organic Act. Secondly, the local statute defining value is expressly limited in its application to use in the relevant local chapter only. That's the preface to all the definitions, that these definitions apply to this chapter. And then thirdly, Your Honor, under the plain language rule of statutory construction, tax value was held simply not to equal valuation as found in the Organic Act. The Attorney General repeatedly relies on Virgin Island decisions defining the territory's property tax system as a hybrid federal and local system. But this argument, as far as Virgin Islands, Guam's real property tax scheme is not a hybrid scheme. The courts in Byrne and in Bluebeard, these are Virgin Island decisions, ruled that Virgin Island's tax scheme was a hybrid scheme because federal law mandated, one, that real property taxes would be assessed on actual value, and two, it even set the tax rate at 1.25%. So it was under this parameter that the court held, okay, well, now that you understand that you've determined the tax rate, now we leave it to you to determine what the local system would be in order to fill in the details. Mr. Feinstein, you went so fast through my question, which I think is the key question. I want to be clear about this. You've got on the one hand the market value. Is that right? Appraised value, yes, Your Honor. Is that the same as the market value? Well, arguably no, because I think market value might incorporate a cost comparison or a comparison, sales comparison analysis, Your Honor. Where do we get the appraised value? Where do we get the appraised value? Yeah. In the court's interpretation or, I'm sorry? No, but how do you know what the appraised value is? Well, there was a 1993 appraisal that was conducted by the government of Guam. This was a gross appraisal of all the real property in Guam. So that's the appraised value. That's the appraised value. And what about the assessed value? The assessed value, Your Honor, is 35 percent of the value. And what I was trying to suggest to you was when they said tax valuation, that sounded to me like the assessed value. Well, the distinction, Your Honor, that's very pointed in this regard is the Virgin Islands Organic Act. I know, but it's a different statute, and it actually works the other way, because you think this Congress was trying to put the Virgin Islands and Guam under the same restraints, and they use slightly different language, but they're pointing to the assessed value in both cases. No, I would disagree, Your Honor. Well, I know you disagree, but I don't think it's a very – let me say it's not a very strong argument. But won't you focus on the words tax valuation? Doesn't that throw you right into assessment? Your Honor, that throws you into appraisal. Why does it throw you into appraisal? Well, the tax – well, first of all, assessment would be an element of appraisal in any regard, Your Honor. So the question would become is the assessment – if the assessment were 100 percent or 35 percent, you would still have to start with the appraised value. But the – when Congress uses assessed tax valuation, they're telling you look at what's done for tax purposes. That's correct, Your Honor. Well, they're actually extending it to the next step, which is the assessment, which in – which is not defined, which is not set forth. But why doesn't the assessment value control that? Because that's not the plain language of the Organic Act of Guam, Your Honor. The Organic Act of Guam, as well as Puerto Rico when it was a territory, used aggregate tax valuation. And we feel that the Supreme Court properly interpreted tax valuation to mean the value tax purposes, not the income to be derived from tax purposes. But it doesn't make any sense. It's a restraint. Well, actually, we think it does, Your Honor. If you look at the restraint of constitutional languages throughout the United States, the various state constitutional languages, Your Honor, most of those restraints apply in particular to municipalities, municipal corporations. Guam has a broader base of taxation, Your Honor, than does like the city of Honolulu. I mean, the municipalities, for the most part, are limited in their taxation to real property. Because Guam has a broader base, Your Honor, then they should be allowed, therefore, to take that into consideration. We believe that that was a consideration. You know, the interesting part about the Attorney General's argument is that we have to look at the assessed value because that indicates how much net tax revenues, the cash flow, how much net tax revenues are being drawn. Exactly. If that's the limitation, Your Honor, then we should look at the entire language of Section 11, which allows Guam to tax beyond just real property. Section 11 allows for income taxes. Is Guam taxing beyond real property? Yes, Your Honor. Guam has income taxes, has business gross receipts tax. As a matter of fact, this particular bond that was authorized is disconnected entirely from the real property tax assessments, Your Honor. It is intended to be secured by the gross receipts tax or the business tax that is being generated on the island of Guam. So, yeah, we'd actually refer the Court to a superior court decision of Guam case which is cited by the Supreme Court. That's the Barrett-Anderson decision. In that particular case, Your Honor, the judge in that particular case, well, I thought I had a quote here but may not have it, said that, you know, because of the broader tax scheme that's provided for Guam, they believe that, you know, that Congress intended Guam or did not intend Guam to be so limited in its borrowing ability based solely on its real property income tax because of the broader tax scheme. They thought Guam could run wild while the Virgin Islands had to be restrained. Well, the very unique problems with respect to the Virgin Islands, Your Honor, which required the federal government intervention and the hybrid tax scheme to the extent that the Congress got involved in that particular case, I've read the history on that and it had primarily to do with rich land barons who were being taxed at negligible rates because real property was being taxed according to use as opposed to, you know, the particular type of land. And so, you know, in that regard, they understood that these land barons would control taxes to the detriment of all the other landholders and that's why Congress really felt the need to get involved. And actually, and we think that that is a significant distinction with respect to Virgin Islands, Congress wanted to get involved very specifically in the Virgin Islands, put into place the tax scheme on a general basis and that's why you ended up with a hybrid federal and local tax scheme, which does not exist on Guam. How do you define the line? Would you define tax alignment as the actual value, the appraised value? The appraised value. That's correct, Your Honor. I believe that's how the court identifies it as the appraised value of property on Guam. Counsel, what's your response to opposing counsel's argument that appraised value is not a legitimate measure in this case because the government has not complied with its obligation to regularly assess the property? Well, in that particular case, I think the AG is looking at the triennial valuation requirement specifically. One thing to keep in mind is that the triennial valuation requirement is only one component of the overall local statutory tax scheme. The real property tax scheme has an added measure of certainty to the tax role that's been ignored by the Attorney General. Guam law provides that a taxpayer may challenge any tax assessment if he or she is in the property. I understand that, but what about the issue that you have not, that the government has not complied with its obligation to do the triennial? That's a tax assessment question, Your Honor, and the Supreme Court noted that, that that might be a proper challenge with respect to tax assessments. The triennial valuation, however, again, is a local requirement that was actually put into place by the 13th Guam legislature 28 years now after the enactment of the Organic Act. And so it's ironic that the Attorney General has repeatedly argued that local law cannot interpret or control federal law, but that's the exact argument that he's making is that in this particular case you have a local law which has a triennial valuation requirement which he has argued now must be binding on an interpretation of federal law, which is the definition of aggregate valuation. But we note that that requirement, Your Honor, is not a requirement for debt ceiling purposes. And again, looking at the specific language of that statute, it also limits itself to purposes of tax assessment. That's within the statute itself, Your Honor. So in that regard, we would simply say that that's a local requirement for assessment purposes, which has no controlling effect, Your Honor, on the Organic Act. And as an aside, the legislature enacted Public Law 27-21, which, as the Court is aware, later amended that provision so that now the tax assessor can rely on the earlier enactments or the earlier valuation going back to 1993. Now, the Supreme Court of Guam opted not to rely on that statute because it was enacted after the 2002 tax rule went into effect. But through the passage of time, we now have the 2003 tax rule in effect, which was enacted subsequent to the amendment to that law, and in five months we'll have the 2004 tax rule in effect. And in those particular cases, the challenge, Your Honor, we would say has become moot through the passage of time and now the applicability of 27-21. Well, if you wanted to increase your borrowing power, the legislature could change the ratio of assessment to fair market value, wouldn't it? Adopting the Attorney General's argument that assessment controls, yes. And actually, Your Honor, that's another issue we would submit. It lends, I guess, more support to the Supreme Court's decisions. The fact that the 35 percent is an arbitrary figure that can be amended or up or down by the legislature at any time. In the Virgin Islands case, Congress further mandated that the Virgin Islands' tax percentage was 1.25 percent but also made it a specific federal requirement, oh, and you will increase your taxes as necessary to meet your debt service. So we see that Congress recognizes local legislature's ability to adjust their, I guess, their tax assessments as necessary to meet their debt service. And so that's something where if that, in effect, became an issue, then, of course, the legislature could amend it and they wouldn't be controlled then by that 35 percent figure. As a matter of fact, very early on, the figure was 50 percent and it was readjusted. So it just indicates the arbitrariness, I guess, of that 35 percent assessment figure. If there's no further questions. Were you going to address the judicial bias issue before you concluded your argument? Yes, Your Honor. Well, we feel that that, probably more so than any other issue, is a matter of complete local deference, Your Honor, with respect to the quintessential local issue, Your Honor. In this particular case, the court determined through the rule of necessity, which has been followed by this court as well as the U.S. Supreme Court, mandated that they had to use these justices. If the payment to the justices, government income, was an issue, that's an issue that would affect any person sitting on the bench as well as the Attorney General for that matter, Your Honor. I mean, he's also impacted by this, but there's no question with respect to his ability to remain independent in this matter, Your Honor. And then there was also some questions about retirement benefits. In those particular cases, Your Honor, those were contingent, speculative financial interests. One even dealt with respect to one of the justices' wife's. We felt that the court correctly ruled that the nexus here was too speculative to mandate disqualification. But the overriding principle, Your Honor, we feel, is the rule of necessity, which controls the court's decision in that matter. Have the bonds that were the subject of this case been issued? No, Your Honor. They're being held up because of the Attorney General's refusal to execute on them. And so what is it that you're anticipating that if we confirm the Supreme Court's opinion, that will do what? Will that force the Attorney General to sign on? Yes, Your Honor, it should. What if the Attorney General still refuses to sign? If we uphold the declaratory judgment and the Attorney General still refuses to sign, where does that leave you? Well, I believe that would subject him, then, to the court's writ authority. Then a writ of mandate would be issued, I presume, on the basis of— He might be back at Marbury v. Smith. We might attack, Your Honor. We might attack. Thank you. Thank you, Your Honor. Before you go further, let me ask you, what do you say to this easy way of avoiding your position, that your position is accepted, then the legislature just raises the ratio so it's 50%? Your Honor, anyone that's bought a house or took a loan out of money knows that you have to have a present ability to repay. And I use the analogy of a lawyer who is working as a paralegal. You may have the potential to earn a $100,000 salary a year, but as a paralegal, you'll only earn maybe half that amount. And in this case, that is the part of the democratic process that's set up here. The politicians must raise the taxes and face the public scrutiny in order to get the amount of borrowing that they want. In this case, the Supreme Court has maxed out the potential amount of borrowing, saying that this is how much you can borrow, but has not commensurately increased the real property taxes, which the statute passed by Congress specifically references. And we would take issue that the grocery cease taxes are the proper gauge. It may or may not have been this $418 million debt may have been contingent on the grocery cease taxes, but that's not a property tax. That's a tax on goods and services. And the Congress specifically tied in the ability to borrow based upon the local tax rate. Nowhere in our organic act does Congress tell us how to tax real property. And that's where I must correct a misstatement of our position on this. I'm not saying that local statute can't define a federal statute. That's a Supremacy Clause violation. But as in the Byrne case, the Virgin Islands, they defer to local interpretation. And Byrne is different, too, because the language that Congress used on the Virgin Islands is slightly different. Do you disagree with the council's statement that Virgin Islands, the law of Virgin Islands, was controlled because of the differences in the recent laws? I believe, as Judge Noonan pointed out, they're focusing on the assessed value. The only difference on the language is because the Congress put the ad volarem method of taxing in the actual organic act, and they put 1.25 percent, and they told the Virgin Islands how you're going to tax your real property. They never did that. They just used that word tax, and that's why I see, although it's the same Congress, we have different histories behind us. Also, that current ability to pay, we believe, is consistent with the principles of the democratic process. In the grocery receipts tax example, a year later, the legislature has now reduced the grocery receipts tax. For whatever reason, the public pressure has caused the senators to reduce it from the 6 percent, which was intended, the additional 2 percent, from 4 to 6 percent was intended to support this bond venture. It didn't happen the way that the politicians wanted it to happen, and now we're back down to 4 percent just recently. And it received quite a bit of public support, and I know that is a factual statement. So we believe that the current ability to repay the tax is just only rational and consistent with the reason why you don't want the government incurring so much debt. You don't want the horse to be out of the barn first. You want the people to see the taxation coming to them, having to face it, and then the politicians starting to enter into bond indentures, so the public could necessarily vote out the politician, have a referendum. Guam has two statutes on its books that before you do a tax increase or before you do a bond indenture more than $25 million, you must get a referendum from the people. In this public law 2719, they exempted themselves from it, which again is a highly suspicious nature. Why aren't you putting it to the people? And I know that it's not a federal amendment that you have a referendum before increasing taxes, but that is on the books of the council. Let me ask you, a pollster council was cited to the Superior Court case of Barrett-Anderson. Yes, ma'am. And so we have the Barrett-Anderson case, which admittedly is a Superior Court case, but then we have the Supreme Court of Guam both saying that the phrase aggregate tax valuation means the appraised value. Why shouldn't we give deference to those interpretations? For the same responses that I had given earlier, Your Honor, this is the first time that a federal court in an appellate capacity through this panel has entertained this question. We also have the 2003 Byrne decision, which as Justice Farris or I'm sorry, Judge Farris pointed out, excuse me, that the actual value, apart from how you value the properties or not or whether the debt ceiling is high or low, you still are faced with the fundamental problem, what is the actual value of property on Guam? You have an X where a figure should be on what is the value of property in 2003, and that Byrne decision, it was so uncanny reviewing it, it's a quite lengthy opinion, but everything in there is commensurate with what has been going on on Guam. Because wasn't the Organic Act in the Virgin Islands a little different because it specifically defined what tax valuation was, and so there was no room to interpret because it was specified. So isn't that a little different in terms of us relying on that ruling? Yes, it would be, Your Honor. I have to refresh my memory. I know Guam does not define what the aggregate tax value is. And the statute in the Virgin Islands did specify that it was appraised value, right? I have to look back at my notes on that, Your Honor. I think that it did specify, which would undermine your reliance on that case because if Congress enacted two debt limitation acts for two territories and then one specified the definition of tax valuation and the other left the definition unspecified, doesn't that reflect an intent on the part of Congress not to equate the two, the definition for the territories in the same way? It might except that Congress also participated in the valuation of property in the Virgin Islands but chose to defer to local legislation on Guam. It also seems to be inconsistent with the idea that if you don't have the ability to repay it and the Guam taxes, they pointed out in the Virgin Islands you have land-rich, cash-poor, actually it's more like land-rich politicians that don't want to see a high tax rate because they could lose their properties. Guam has a similar situation, and how can you enter into a note and expect the taxpayers to pay when there's not a present ability to repay because once you enter into that note you're in an obligation and then you have to go after the taxpayers to increase the taxes. And if the money's not there, then the federal government has a strong interest in it. Yeah, that's legislative intent, but in terms of pure statutory interpretation, what do you make of the fact that in the Virgin Islands the term was specifically defined and in the Organic Act for Guam it was not? The language used in the Virgin Islands was aggregate assessed valuation of tax on real property. The language used on Guam was aggregate tax valuation of the property on Guam. Without using the assessed. That's correct. However, because of Guam's unique situation that there is no federal definition of taxation in the Organic Act on Guam, it deferred, like the Byrne decision said, there are certain things they deferred to the locals to do, and that was the idea of the local tax treatment, and that assessed value is 35% of the appraised value, and that's how the Supreme Court had made its decision to max this out, and we only were at 35% appraised. Thank you. I understand your argument. All right, thank you to both counts for excellent arguments. The case just argued is submitted for a decision. This is the final case on calendar, so this court for this session is in recess. All right. Thank you. That's Hawaiian. Thank you. very much.
judges: Farris, Noonan, Rawlinson